# LOCAL BANKRUPTCY FORM 9014-3

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY VICINAGE OF TRENTON

| IN RE: Kevin Golom | CHAPTER THIRTEEN |
|---|---|
| Debtor | Case Number *22-11194-CMG* |

\* \* \* \* \*

## NOTICE OF MOTION, RESPONSE DEADLINE AND HEARING DATE

Movant Wyndmoor Apartments by and through its attorney, Jénel R. Marraccini, Esquire, has filed a "Motion for Relief from the Automatic Stay to permit Wyndmoor Apartments to Proceed with an Eviction for 4 Civic Center Drive, Unit 4-8, East Brunswick, New Jersey, 08816 with the court for leave to bring action for possession of the property and/or eviction of the Debtor.

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult an attorney.)

1.   1. If you do not want the court to grant the relief sought in the motion or if you want the court to consider your views on the motion, then on or before January 11, 2023 with court. with the Clerk of the Court, with a copy sent to Petitioner's attorney, at the following addresses:

| | |
|---|---|
| Office of the Clerk | Jénel R. Marraccini, Esquire |
| United States Bankruptcy Court | COHEN MARRACCINI, LLC |
| U.S. Post Office and Courthouse | 660 Second Street Pike |
| 401 Market Street | Southampton, PA  18966 |
| Camden, NJ 08101 | Phone No. (215) 887-8100 |
| 609-361-2300 | |

If you mail your answer to the bankruptcy clerk's office for filing, you must mail it early enough so that it will be received on or before the date stated above; and

You must also mail copies of your response to the following trustees:

| | |
|---|---|
| Albert Russo | U.S. Trustee |
| Standing Chapter 13 Trustee | U.S. Department of Justice |
| CN 4853 | Office of the U.S. Trustee |
| Trenton, NJ 08650-4853 | One Newark Center, Suite 2100 |
| (609) 587-6888 | Newark NJ 07102 |
| | 973-645-3014 |

2.  If you or your attorney do not take the steps outlines above, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting said relief.

3.  A hearing on the motion is scheduled to be held before the **Honorable Christine M. Gravelle** on January 18, 2023 at 9 a.m. in Courtroom 3 at the Clarkson S. Fisher US Courthouse, 402 East State Street, Trenton, NJ 08608.  Unless the court orders otherwise, the hearing on this contested matter will be an evidentiary hearing at which witnesses may testify with respect to disputed material factual issues in the manner directed by Rule 9014(d) of the Federal Rules of Bankruptcy Procedure.  (Please note that this hearing is likely to be held telephonically through Court Solutions.  Please see https://www.njb.uscourts.gov/judges-info/honorable-christine-m-gravelle for more information regarding Judge Gravelle's procedures for holding and attending telephonic hearings.)

4.  You may contact the Bankruptcy Clerk's Office at 215-408-2800 to find out whether the hearing has been cancelled because no one filed an answer.

Date:  December 26, 2022

                                                                                COHEN MARRACCINI, LLC

BY: /s/ Jénel R. Marraccini
_____
JÉNEL R. MARRACCINI, ESQUIRE
Attorney for Movant
660 Second Street Pike
Southampton, PA  18966
(215)887-8100

**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON**

| IN RE: Kevin Golom | CHAPTER THIRTEEN |
|---|---|
| Debtor | Case Number *22-11194-CMG* |

**AMMENDED MOTION FOR RELIEF FROM AUTOMATIC STAY TO PERMIT
WYNDMOOR APARTMENTS, LLC TO PROCEED WITH AN EVICTION FOR
4 Civic Center Drive, Unit 4-8, East Brunswick, New Jersey, 08816**

Petitioner, Wyndmoor Apartments, LLC, by and through their attorney, Jénel R. Marraccini, Esquire, moves this Court for an Order granting Relief From the Automatic Stay provided for by 11 U.S.C. Section 362 and in support thereof avers the following:

1. The Petitioner is the owner of the property located at 4 Civic Center Drive, Unit 4-8, East Brunswick, New Jersey 08816 where the Debtor resides.

2. Kevin Golom is the Debtor in the above-entitled case under Chapter 13 of the Bankruptcy Code pending in this Court.

3. On February 15, 2022, the above-named Debtor filed a Petition for Relief under Chapter 13 of the Bankruptcy Code in this court.

4. Subsequent to the filing of the Petition for Relief in Bankruptcy, the Debtor has not paid rent in the following amounts to the Petitioner herein

5. After the filing of the Petition for Relief in Bankruptcy, Debtor's payment history

| Date | Description | Charge | Payment | Balance |
|---|---|---|---|---|
| 03/01/22 | Rent (03/2022) | $1,527.00 | | $1,527.0 |
| 03/06/22 | Late Charge | $76.35 | | $1603.35 |
| 04/01/22 | Rent (04/2022) | $1,527.00 | | $3,130.35 |
| 04/06/22 | Late Charge | $76.35 | | $3,206.70 |
| 05/01/22 | Rent (05/2022) | $1,527.00 | | $4,733.70 |
| 05/06/22 | Late Charge | $76.35 | | $4,810.05 |
| 06/01/22 | Rent (06/2022) | $1,527.00 | | $6,337.05 |
| 06/06/22 | Late Charge | $76.35 | | $6,413.40 |
| 07/01/22 | Rent (07/2022) | $1,527.00 | | $7,940.40 |
| 07/06/22 | Late Charge | $76.35 | | $8,016.75 |
| 08/01/22 | Rent (08/2022) | $1,527.00 | | $9,543.75 |
| 08/06/22 | Late Charge | $76.35 | | $9,620.10 |
| 09/01/22 | Rent (09/2022) | $1,527.00 | | $11,147.10 |
| 09/06/22 | Late Charge | $76.35 | | $11,223.45 |
| 10/01/22 | Rent (10/2022) | $1,527.00 | | $12,750.45 |
| 10/06/22 | Late Charge | $76.35 | | $12,826.80 |
| 11/01/22 | Rent (11/2022) | $1,527.00 | | $14,353.80 |
| 11/06/22 | Late Charge | $76.35 | | $14,430.15 |
| 12/01/22 | Rent (11/2022) | $1,527.00 | | $15,957.15 |
| 12/06/22 | Late Charge | $76.35 | | $16,033.50 |

In addition, due to Debtor's failure to pay the aforementioned post petition rent payments, Petitioner herein has had to incur $750.00 in legal fees and costs, which Debtor is responsible for in accordance with the parties' lease agreement.

6.  The Debtor does not have the means of paying her rent and the Petitioner is without adequate protection.

7.  Debtor continues to have the use of the apartment "Rent-Free" has no right to remain therein without paying rent.

WHEREFORE, Petitioner moves this Court for an Order Granting Relief from the Automatic Stay provided for by 11 U.S.C. Section 362 and permitting Petitioner to proceed with an action for possession of the leased premises.

Respectfully submitted,

COHEN MARRACCINI, LLC


/s/ Jénel R. Marraccini

BY: _____
JÉNEL R. MARRACCINI, ESQUIRE
Attorney for Movant
660 Second Street Pike
Southampton, PA  18966
(215)887-8100

COHEN MARACCINI, LLC
JÉNEL R. MARRACCINI, ESQ.
MICHAEL ADLER, ESQ.
660 Second Street Pike
Southampton, PA 18966
Telephone No. (215) 887-8100
Movant Wyndmoor Apartments

**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF NEW
JERSEY VICINAGE OF TRENTON**

| IN RE: Kevin Golom | CHAPTER THIRTEEN |
|---|---|
| Debtor | Case Number *22-11194-CMG* |

**CERTIFICATION OF PETITIONER JOSH GREENBERGER IN SUPPORT OF
MOTION FOR RELIEF FROM AUTOMATIC STAY**

I, Josh Greenberger certify the following:

1.	I am the Director of operations for the property located at 4 Civic Center Drive, Unit 4-8, East Brunswick, New Jersey 08816 Debtor Kevin Golom currently resides at the Premises under the terms of a residential lease. A true and correct copy of the residential lease is enclosed herewith as Exhibit A.

2.	I am familiar with Debtor's rental payment history because I am Debtor's landlord and Debtor is my tenant.

3.	On February 15, 2022, the above-named Debtor filed a Petition for Relief under Chapter 13 of the Bankruptcy Code in this Court. (Docket No. 1)

4.	I am seeking relief from the automatic stay to pursue my state court rights due to Debtor's nonpayment of rent.

5. The amount of Debtor's rent per month is $1,527.00
6. After the filing of the Petition for Relief in Bankruptcy, Debtor's payment history

| Date | Description | Charge | Payment | Balance |
|---|---|---|---|---|
| 03/01/22 | Rent (03/2022) | $1,527.00 | | $1,527.00 |
| 03/06/22 | Late Charge | $76.35 | | $1603.35 |
| 04/01/22 | Rent (04/2022) | $1,527.00 | | $3,130.35 |
| 04/06/22 | Late Charge | $76.35 | | $3,206.70 |
| 05/01/22 | Rent (05/2022) | $1,527.00 | | $4,733.70 |
| 05/06/22 | Late Charge | $76.35 | | $4,810.05 |
| 06/01/22 | Rent (06/2022) | $1,527.00 | | $6,337.05 |
| 06/06/22 | Late Charge | $76.35 | | $6,413.40 |
| 07/01/22 | Rent (07/2022) | $1,527.00 | | $7,940.40 |
| 07/06/22 | Late Charge | $76.35 | | $8,016.75 |
| 08/01/22 | Rent (08/2022) | $1,527.00 | | $9,543.75 |
| 08/06/22 | Late Charge | $76.35 | | $9,620.10 |
| 09/01/22 | Rent (09/2022) | $1,527.00 | | $11,147.10 |
| 09/06/22 | Late Charge | $76.35 | | $11,223.45 |
| 10/01/22 | Rent (10/2022) | $1,527.00 | | $12,750.45 |
| 10/06/22 | Late Charge | $76.35 | | $12,826.80 |
| 11/01/22 | Rent (11/2022) | $1,527.00 | | $14,353.80 |
| 11/06/22 | Late Charge | $76.35 | | $14,430.15 |
| 12/01/22 | Rent (11/2022) | $1,527.00 | | $15,957.15 |
| 12/06/22 | Late Charge | $76.35 | | $16,033.50 |
| | | | | 0 |

7. Post-petition, Debtor owes rent totaling $16,033.50 which represents unpaid rent for TEN (10) full months.

8. Debtor's failure to pay rent is cause for relief from the automatic stay.

9. Through this motion, I request relief from the automatic stay so I may initiate a landlord-tenant action in New Jersey Superior Court seeking possession of the Premises and a Warrant of Removal of Debtor.

I certify under penalty of perjury that the foregoing statements made by me are true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: 12/13/22

*Josh Greenberger*

Josh Greenberger Petitioner

COHEN MARACCINI, LLC
JÉNEL R. MARRACCINI, ESQ.
MICHAEL ADLER, ESQ.
660 Second Street Pike
Southampton, PA 18966
Telephone No. (215) 887-8100

        **HEARING DATE:** 01/18/2023
        **HEARING TIME:** 9:00 am
        **LOCATION:** Room 3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| IN RE:  Kevin Golom | CHAPTER THIRTEEN |
|---|---|
| Debtor | Case Number *22-11194-CMG* |

## **STATEMENT AS TO WHY NO BRIEF IS NECESSARY**

In accordance with D.N.J. LBR 9013-1(a)(3), it is respectfully submitted that no brief is necessary in the court's consideration of this motion, as it does not involved complex issues of law.

Date:  December 26, 2022        COHEN MARRACCINI, LLC

        BY:  */s/ Jénel R. Marraccini*
             JÉNEL R. MARRACCINI, ESQUIRE
             Attorney for Petitioner

**IN THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON**

| IN RE: Kevin Golom | CHAPTER THIRTEEN |
|---|---|
| Debtor | Case Number 22-11194-CMG |

**MOTION FOR RELIEF FROM AUTOMATIC STAY TO PERMIT**

<u>ORDER GRANTING RELIEF FROM STAY</u>

The Motion of Petitioner, Wyndmoor Apartments, requesting Relief from the Automatic Stay provided for by Section 362(a) of the Bankruptcy Code is GRANTED.

It is further ORDERED that Petitioner is Granted leave to proceed with an action for possession of the property and/or eviction of the Debtor.

BY THE COURT

_____
J.

Notices sent to:

Jénel R. Marraccini, Esq.
COHEN & WILLWERTH, P.C.
660 Second Street Pike
Southampton, PA  18966

Jeffrey E Jenkins
Jenkins & Clayman
412 White Horse Pike
Audubon, NJ 08106

United States Trustee
Office of U.S. Trustee
833 Chestnut St
Suite 502
Philadelphia, PA 19107

Albert Russo
Chapter 13 Standing Trustee
CN 4853
Trenton, NJ 08650-4853

# EXHIBIT "A"

# APARTMENT LEASE

This Lease is made on August 24th, 2018                                         $750 OFF FIRST MONTH

Between the TENANT(S)    GOLOM, KEVIN            referred to as the "Tenant".

And the LANDLORD    WYNDMOOR APARTMENTS LLC   referred to as the "Landlord".
whose address is 2029 Morris Avenue, Union, New Jersey 07083

FILE COPY

## TABLE OF CONTENTS

| ARTICLE | | ARTICLE | | ARTICLE | |
|---|---|---|---|---|---|
| 1. | Property & Use | 10. | Care of Apartment | 21. | Notices |
| 2. | Term | 11. | Repairs by Landlord | 22. | Signs - Laundry Equipment - Air Conditioners |
| 3. | Rent | 12. | Interruption of Services | | |
| 4. | Security Deposit | | | 23. | End of Lease Term - Damage to Apartment |
| 5. | Late Payments, Increases and C/O fees | 13. | Alterations | | |
| | | 14. | Painting - Decorations | 24. | Renewal |
| 6. | Utilities | | | 25. | Parking Areas |
| 7. | Eviction - Default - Early Termination or Default | 15. | No Waiver by Landlord | 26. | Binding Lease |
| | | | | 27. | Severability |
| | | 16. | No Assignment or Sublease | 28. | Pool |
| 8. | Requirement of Law | | | 29. | Storage Areas |
| 9. | Tenant's Right to Quiet Enjoyment - Landlord's Right to Enter Apartment | 17. | Subordination | 30. | Lease Application |
| | | 18. | Hazardous Use | 31. | Window Guards |
| | | 19. | Injury or Damage | 32. | Rules and Regulations |
| | | 20. | Pets | | |

1. **Property and Use.** The Tenant rents from the Landlord and the Landlord leases to the Tenant Apt.No. 4-8 located at 4 CIVIC CENTER DRIVE, TOWN OF EAST BRUNSWICK, MIDDLESEX COUNTY, STATE OF NJ referred to as the "Apartment". The Tenant agrees to only use the apartment as a residence for the individuals named in the Lease Application.

2. **Term.** The term of this Lease is for starting on November 1st, 2018 and ending on October 31st, 2019. The Landlord is not responsible if the Landlord cannot give the Tenant possession of the Apartment at the start of this Lease. However, rent will only be charged from the date on which possession of the Apartment is made available to the Tenant. If the Landlord cannot give possession within 30 days after the starting date, the Tenant may cancel this Lease.

3. **Rent.** The annual rent is $ 17,100.00 which the Tenant agrees to pay in equal monthly installments of $ 1,425.00. Rent for each month is due on the first day of the month. The full amount of the rent shall be paid without any deductions. The rent is subject to a late charge and possible rent increases as stated in Article 5.

4. **Security Deposit.** The Tenant has deposited with the Landlord the sum of $  750.00 as security that Tenant will comply with the terms of this Lease. If this Lease is renewed, Tenant shall pay any additional security as permitted by Law. The Landlord will hold the security deposit in accordance with the provisions of the State Rent Security Law. The security deposit may not be used for the payment of rent. Landlord advises Tenant that the security deposit is on deposit at SANTANDER BANK, NEW JERSEY
in account entitled WYNDMOOR APARTMENTS TENANT SEC (1 MON CD @ 0.20%)  .

TENANT ACKNOWLEDGES RECEIPT OF A COPY OF THIS LEASE CONTAINING ALL THE ARTICLES LISTED IN THE TABLE OF CONTENTS (ARTICLES 5 THROUGH 32 BEING ATTACHED TO THIS PAGE); LANDLORD'S REGISTRATION STATEMENT; CRIME INSURANCE INFORMATION SHEET; RULES AND REGULATIONS; NJ TRUTH IN RENTING STATEMENT (IN NJ ONLY).

In Witness Whereof, the Landlord and Tenant have respectively signed and sealed this Lease as of the day and year first above written.

WITNESS FOR LANDLORD:                                BY _D. Leonardi_____

_Donna Talian_____                         _Ken Golom_____
                                                     TENANT'S SIGNATURE

WITNESS FOR TENANT:

_Donna Talian_____                         _____
                                                     TENANT'S SIGNATURE
                                                     (400-136)

5.  **Late Rental Payment Charges, C/O Fees, and Rent Increases.** If Landlord does not receive the payment by the fifth day of the month, Tenant shall pay a late fee of $45.00 or 5% of the outstanding rent, whichever is greater, or that amount allowed under any ordinance or law, whichever amount is lesser. This fee shall be considered additional rent unless prohibited by law. If a Tenant's check is returned for any cause, the Tenant agrees to pay a service charge of $25.00 to Landlord as additional rent.

Subject to the approval of the Rent Leveling Board (where applicable) the Tenant also agrees to pay as additional rent, Tenant's proportionate share of any increase in the cost of fuel, sewer, water, and real estate taxes above the cost of such items and taxes for the base year. The base year shall be the calendar year prior to the year in which this Apartment Lease is executed. Tenant also agrees to pay any and all certificate of occupancy fees that are assessed by the town. Landlord shall notify Tenant of the increase or fee, and Tenant agrees to pay the amount when due as additional rent.

6.  **Utilities.** The Tenant shall be responsible for paying all utility charges applicable to the apartment when the charges are based on an individual utility meter that only services Tenant's apartment. Tenant agrees to pay an administrative fee, due and payable as rent, to the Landlord of $ 50.00 for each utility bill that the Landlord has to pay on behalf of the tenant in addition to the utility bill amount itself.

7.  **Eviction – Default – Early Termination or Abandonment.** If the Landlord does not receive the rent within five (5) days after it is due, the Tenant may be evicted. The Landlord may also evict the Tenant if the Tenant does not comply with all of the terms of this Lease and for all other causes allowed by law. If evicted or if the Tenant vacates or abandons prior to the end of the Lease Term, the Tenant must continue to pay the rent for the rest of the term. The Tenant shall also pay all costs collectible as additional rent, including reasonable attorney fees, related to the eviction and the collection of any moneys owed the Landlord, along with the cost of re-entering re-renting, decoration, painting, cleaning and repairing the Apartment. Tenant also agrees to pay re-renting charges, if Tenant vacates the apartment prior to the end of the Lease term in addition to paying the rent for the rest of their term. The minimum re-renting fee will be $150.00 with actual costs determining the final amount due. Rent received from any new tenant will reduce the amount owed the Landlord.

The Tenant shall be deemed to have abandoned the apartment if Tenant has not paid rent for thirty (30) days, is absent from the Apartment for the same thirty (30) days and has not notified Landlord in writing that Tenant is not abandoning the Apartment. If it is deemed that Tenant has abandoned the Apartment, Landlord shall have the option to re-enter the Apartment and try to re-rent it. Tenant shall be liable to Landlord for the costs in the first paragraph of this Article. Any property left in the Apartment by Tenant shall be deemed abandoned and shall entitle Landlord to dispose of it in accordance with applicable laws.

8.  **Requirements of Law.** Tenant and Landlord shall comply with all laws, ordinances, rules, regulations, requirements directives of the Federal, State, County and Municipal governments or public authorities as well as fire underwriters and insurance companies.

9.  **Tenant's Right to Quiet Enjoyment/Landlord's Right to Enter Apartment.** Landlord agrees with Tenant that upon Tenant paying the rent and performing all of Tenant's covenants and conditions in the lease Tenant shall peaceably and quietly have, hold and enjoy the apartment for the term of this lease. However, Landlord shall have the right to enter the apartment at all reasonable times for purposes of making ordinary or emergency repairs and maintenance as well as to inspect the apartment. Landlord shall also have the right to enter the apartment in order to show the apartment to prospective new Tenants or Owners at reasonable hours. Whenever circumstances permit it to do so the Landlord shall make every reasonable effort to advise the Tenant in advance of Landlord's intent to enter the apartment.

The Tenant may not change the primary locks of the apartment. The Tenant may install at Tenant's expense a secondary lock only with the written permission of Landlord and shall deposit a duplicate key with the Landlord. This secondary lock shall become part of the apartment and shall remain after termination. All keys furnished to Tenant at the beginning of the lease shall be returned to Landlord after termination and for each key Tenant fails to return he shall be charged fifty dollars as liquidated damages.

Tenant acknowledges that their right to quiet enjoyment does not include disturbing or interfering with other Tenants or the Landlord in the operation and maintenance of the building(s) in which the apartment is located.

10. **Care of the Apartment.** The Tenant has examined the Apartment, including the living quarters, all facilities, carpeting (if supplied), furniture and appliances, and is satisfied with its present physical condition. The Tenant agrees to maintain the property in as good condition as it is at the start of this Lease except for ordinary wear and tear. The Tenant must pay for all repairs, replacements and damages caused by the act or neglect of the Tenant, the Tenant's household members or their visitors and will be due as additional rent. The Tenant will remove all of the Tenant's property at the end of this Lease. Any property that is left becomes the property of the Landlord and may be disposed of in accordance with applicable laws.

11. **Repairs by Landlord.** If the Apartment is damaged or in need of repair, the Tenant must promptly notify the Landlord. The Landlord will have a reasonable amount of time to make repairs. If the Apartment is totally destroyed, this Lease will end and the Tenant will pay rent up to the date of destruction.

**12. Interruption of Services.** The Landlord is not responsible for any inconvenience or interruption of services due to repairs, improvements or for any reason beyond the Landlord's control. Tenant may not reduce Tenant's rent payment because of any such inconvenience or interruption of services.

**13. Alterations.** The Tenant must get the Landlord's prior written consent to alter, improve, paint, or wallpaper the Apartment. Alterations, additions and improvement become the Landlord's property. If any alterations, painting, decorating or improvement are made with or without Landlord's consent the Tenant agrees that the Landlord may retain from the security deposit sufficient monies to restore the apartment to its original condition. If the cost of restoring the apartment exceeds the security deposit Tenant agrees to pay the excess cost to Landlord. If Tenant does not pay the excess cost and Landlord has to sue Tenant to collect the excess cost, Tenant shall also pay Landlord's attorney's fees and court costs.

**14. Painting – Decorations.** Tenant shall have no right, upon a renewal of its lease, to require Landlord to paint or otherwise redecorate the rented apartment nor shall Tenant have any right to receive reimbursement from Landlord for the cost of painting or decoration done with or without Landlord's approval.

If Tenant fails to occupy the rented apartment for a total period of two years from the commencement of original lease, Tenant does hereby agree to reimburse the Landlord for the cost of painting and decorating the apartment, the minimum cost of which is $225.00. Tenant authorizes Landlord to use Tenant's security deposit to reimburse Landlord for its costs. If the costs exceed the deposit amount, Tenant agrees to pay the excess amount.

**15. No Waiver by Landlord.** The Landlord does not give up any right by accepting rent or by failing to enforce any terms of this Lease.

**16. No Assignment or Sublease.** The Tenant may not sublease the Apartment or assign this Lease without the Landlord's prior written consent.

**17. Subordination.** This Lease and the Tenant's rights are subject and subordinate to present and future mortgages on the apartment complex, which includes the Apartment as well as any renewals, modifications or amendments to a mortgage. The Landlord may execute any papers on the Tenant's behalf as the Tenant's attorney in fact to accomplish this.

**18. Hazardous Use.** The Tenant will not keep anything in the Apartment which is dangerous, flammable, explosive or might increase the danger of fire or any other hazard.

**19. Injury or Damage.** The Tenant will be responsible for any injury or damage caused by the act or neglect of the Tenant, the Tenant's household members, their visitors or anybody working for the Tenant. The Landlord is not responsible for any injury or damage unless due to the negligence or improper conduct of the Landlord.

**20. Pets.** No dogs, cats, or other animals are allowed in this Apartment without the written consent of the Landlord.

**21. Notices.** All notices provided by this Lease must be written and either delivered personally or certified mail, return receipt requested. Notices to the Landlord shall be to the Landlord's address and to the Tenant at the apartment.

**22. Signs-Smoke Detectors-Laundry Equipment-Air Conditioners.** The Tenant may not put any sign or project (such as a TV or radio antenna) in or out of the windows or exteriors of the Apartment without the Landlord's prior written consent.

The Tenant agrees to inspect monthly the smoke detector, if any, installed in the Apartment and change the batteries when needed. Tenant agrees to immediately notify Landlord if the detector is not working.

The Tenant will not (a) use or store any washing machines or clothes dryers in the Apartment or (b) install or use any air conditioners in the Apartment except those installed by Landlord.

**23. End of Lease Term-Damage to Apartment.** At the end of the Lease term or any renewal term the Tenant agrees to vacate the Apartment and leave it broom clean and in good order and condition. Tenant shall remove all of Tenant's property. If there is any damage to the Apartment, Landlord shall be permitted to deduct from Tenant's security deposit the amount of money necessary to repair the damage. Landlord shall notify Tenant in writing of any deductions. In the event the cost of repairing the damage exceeds Tenant's security deposit, Landlord may sue Tenant for the excess repair costs as well as court costs and reasonable attorney's fees relating to the legal action if Tenant does not pay the excess cost to Landlord.

**24. Renewal.** The Landlord may offer the Tenant a renewal to take effect at the end of this Lease. The renewal may include reasonable changes and an increase in rent. The Tenant will be notified of the proposed renewal at least forty-five (45) days before the end of the current Lease or renewal term.

If Tenant does not wish to renew in accordance with the renewal notice, then Tenant shall notify Landlord not less than thirty (30) days prior to the end of the lease term in writing. This shall mean that Tenant is obligated to vacate the Apartment at the end of the present Lease or renewal term.

The failure of Tenant to notify Landlord in writing not less than thirty (30) days prior to the end of the lease term of Tenant's decision not to renew shall mean that Tenant will be responsible to Landlord under the terms of the renewal notice.

25. **Parking Areas.** Tenant or anyone else shall store no type of vehicle in the parking areas. Landlord shall have the right, upon written notice to the owner of the vehicle, to have any abandoned vehicle or non-passenger type vehicles removed at Tenant's expense from the parking area if that vehicle is parked in the parking area for more than five consecutive days. If Landlord removes a Tenant's vehicle, Landlord shall not be responsible for any loss, damage, theft, injury or destruction to the vehicle or personal property in the vehicle. Tenant shall reimburse Landlord for all costs incurred by Landlord in having the vehicle removed and stored. The Tenant will not store or keep anything in a vehicle or in the parking areas, which may be hazardous or dangerous. The Landlord shall not be liable for any type of injury, theft, loss, damage or destruction to any vehicle or personal property of Tenant. The Tenant and the Tenant's guests shall not use the parking areas and driveways so as to interfere with the use by others.

26. **Binding Lease.** This lease is not binding upon the Landlord until the Lease is signed by Landlord or its designated Agent. This Lease may only be modified by a written document signed by Landlord and Tenant.

27. **Severability.** If any provision in this Lease is declared invalid, the invalidity of that provision shall not affect the other provisions in this Lease.

28. **Pool.** If the apartment complex contains a pool facility, this Article shall be applicable. Landlord agrees that Tenant, Tenant's family and guest may use the swimming pool and its area, provided that Tenant pay any charges imposed by Landlord relative to the use of the pool facilities. Tenant, their family and guests, agree that the use shall be at their on risk and they agree to abide by the rules for the pool and its area.

29. **Storage Areas.** Landlord may, in its discretion, supply to Tenant, when available, storage bins or storage area in the building's basement. Tenant may use the bins or area at Tenant's own risk. Tenant agrees that Landlord, its employees or agents shall not be responsible or liable for any injury to any person in regard to this use. Tenant further agree that Landlord, its employees or agents shall not be liable for any loss or damage to Tenant's property stored or placed in the bins or storage area.

30. **Lease Application-Occupancy.** Tenant acknowledges that the Landlord is relying upon the information stated in the Lease Application. In the event there is false information stated by Tenant, the Landlord may, at its option, cancel this Lease. Tenant agrees that he will not allow any people other than those individuals listed in the Lease Application to occupy the Apartment.

31. **Window Guards.** If Tenant has children ten years or younger living in the apartment, Tenant has the right to request, in writing, the installation of window guards in their apartment and accessible hallway windows above the first floor that are not fire escapes. Tenant will pay for the purchase and installation of said window guards.

32. **Rules and Regulations.** The Tenant, members of Tenant's family, their guests and invitees, agree to abide by the rules and regulations attached to this Lease. Tenant acknowledges that Landlord shall have the right during the Lease Term and any renewals to make other reasonable rules and regulations and Tenant agrees to comply with them.

   A. **Carpeting:** If the apartment is delivered to Tenant uncarpeted, Tenant agrees to carpet no less than 80% of the floor space in each room, within 30 days.

   B. **Broken Lease:** If Tenant, for whatever reason, breaks his lease before the end of its term, Tenant Agrees to (1) a re-renting fee of $150.00 (2) the cost of painting and redecorating the apartment, and (3) rent until the end of the lease term to be reduced by any new Tenants rent.

   C. **Waterbeds:** Tenant is expressly prohibited from the use of waterbeds in the apartment.

   D. **Basements:** Basements are to be used for storage only. Tenant is expressly prohibited from using the basement as a bedroom or sleeping area. Tenant understands that this use would be a violation of the local fire code and is grounds for immediate eviction.

   E. **Satellite dishes:** may not be installed permanently on any brickwork, roof or common area of the building. Dishes may only be installed within a tenant's apartment or private balcony. Tenant agrees that they will request permission from the landlord, in writing, before installing a satellite dish. Landlord reserves the right to remove all dishes not installed in accordance with these regulations.

   F. **Sleeping Areas:** Only bedrooms are designated sleeping areas. Use of any other room for sleeping is a violation of the lease.

   G. **Renters Insurance:** Tenant understands that it is essential for him to obtain renters insurance in order to insure his possessions in the event of a fire, casualty, or other such act. Tenant agrees that Landlord is held harmless from any such claims. Tenant agrees that it will hold Landlord harmless from any claims beyond Landlords control.

   H. **Bedbug Infestation:** Tenant agrees that he/she will be solely responsible for payment of any extermination by Landlord of any bedbug infestation and that the cost for this treatment shall be due and payable as rent.

THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY HAS CERTIFIED THAT THIS LEASE IS IN COMPLIANCE WITH THE PLAIN LANGUAGE LAW.